# PRATHER v. THE UNITED STATES.

REVENUE ACTS ; STATUTORY CONSTRUCTION ; OLEOMARGARINE ; DELEGATION OF LEGISLATIVE POWERS ; CRIMINAL INTENT.

1. The Act of Congress of August 2, 1886, relating to the sale of oleomargarine, is a revenue act by its express terms, and with its penal provisions is to be liberally construed ; and the courts in construing it will not inquire into the motives which led to its enactment.

2. The fact.that section 6 of that act leaves it to the Commissioner of the Internal Revenue, with the approval of the Secretary of the Treasury, to determine by regulations how packages of oleomargarine shall be marked or stamped, the omission or falsification of which stamping or marking constitutes the offence punished by the act, does not render such section unconstitutional and void as a delegation of legislative power.

3. On the trial in a United States court of a person indicted for the violation of that act in selling unstamped or unmarked packages of oleomargarine, it is not necessary for the Government to specially prove the departmental regulations prescribed in pursuance of the statute. The court will take judicial notice of them.

4. In the trial of such an indictment it is sufficient for the Government to show that the article was sold in the defendant's place of business in the usual and ordinary course of business, whether it was sold by himself personally or by a clerk or employee.

No. 575. Submitted May 19, 1896. Decided June 1, 1896.

HEARING on an appeal by a defendant indicted for and convicted of a violation of Section 6 of the act of Congress

of August 2, 1886, regulating the sale of oleomargarine. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. J. M. Wilson* and *Mr. Henry E. Davis* for the appellant:

1. The indictment in this case is attacked upon the grounds that the act is unconstitutional; that Congress cannot delegate to the Commissioner of Internal Revenue, acting either alone or with any other person, authority and power to determine what acts shall be criminal, and that the act does not define what act done or omitted to be done shall constitute a criminal offence.

There is no common-law crime against the United States. The legislative authority must first make an act a crime, affix a punishment to it, and declare the court that shall have jurisdiction of it before a given act can be deemed an offence against the United States. *U. S.* v. *Hudson,* 7 Cr. 32; *U. S.* v. *Coolidge,* 1 Wh. 415; *U. S.* v. *Terrel,* Hempst. 411. The courts of the United States, to determine what constitutes an offence againt the United States, must resort to the statutes of the United States, enacted in pursuance of the Constitution. *U. S.* v. *Terrel, supra.*

No offence against the United States can, therefore, be lawfully created by a statute which attempts to make criminal an act which may be in violation of a regulation thereafter to be formulated by some department or officer of Government. If the doing or not doing the act depends upon its prescription or prohibition by some person named in the statute after the statute shall have passed from the domain of Congress, such act cannot be deemed an offence by the courts of the United States: because, first, Congress cannot delegate its power to declare offences any more than it can delegate any other of its legislative functions (*Stoutenburgh* v. *Hennick,* 129 U. S. 141); and, secondly, Congress

cannot make criminal an act unknown and unconceived at the time of its action. It is not the law of the United States that Congress can say of a given officer : " We do not know what he is going to declare to be an offence, but what he may so declare is hereby made an offence." The clear and jealously guarded division of the powers of government into legislative, executive, and judicial forbids the mere entertaining such a thought. *Railroad Co.* v. *Commrs.*, 1 Oh. St. 77 ; *Santo* v. *State*, 2 Iowa, 165 ; Sutherland, Stat. Const., Sec. 69 ; Cooley, Const. Lims. (6th ed.), 137 ; *Barto* v. *Himrod*, 8 N. Y. 483; *Rice* v. *Foster*, 4 Harr. 479 ; *State* v. *Swisher*, 17 Tex. 441; *Ex parte Wall*, 48 Cal. 279. And Congress cannot adopt prospectively future acts of State legislation on any given subject, because that would be a delegation of legislative power.' Sedg. Stat. and Const. Law, 550 ; *U. S.* v. *Knight*, 3 Sumn. 358 ; *Wayman* v. *Southard*, 10 Wh. 1, 47 ; *In re Freeman*, 2 Curtis, 495.

The main question is well considered in *United States* v. *Eaton*, 144 U. S. 677, in which the very law under discussion was dealt with. And the applicability of the language used in that case to the case at bar is only strengthened by what was said by the court in *Caha* v. *U. S.*, 152 U. S. 211, relied on by the Government in the court below.

2. The court below was asked to instruct for acquittal upon the double ground that the regulations mentioned in the indictment were not offered in evidence, and that a sale by the appellant himself was not proved or offered to be proved.

*a.* The regulations on which the indictment is based should have been offered in evidence. The case is different in this respect from the Caha case. In that case the regulations were in execution of a plain law ; in this case they are what purport to be the law itself. To say that in such a case as this the citizen is to be in daily attendance upon an executive department to find what the law is, is to say that he lives at the executive whim.

*b.* The appellant should not have been convicted for a sale by his clerk, and, it not being proved that there was a sale by the appellant himself, the court should have directed his acquittal; much more should the court not have charged the jury that a sale by a clerk would suffice to convict the appellant. Knowledge by the accused in such a case is essential to guilt; and in case of a sale by an employee of the accused either direction of the act by the accused or acquiescence by him in it is indispensable to conviction. *U. S.* v. *Halberskadt,* Gilpin, 262; *Verona Co.* v. *Murtaugh,* 50 N. Y. 314.

*Mr. Arthur A. Birney,* U. S. Attorney for the District of Columbia; *Mr. Hugh T. Taggart,* Assistant Attorney, and *Mr. John E. Laskey* for the United States.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from a judgment of the Supreme Court of the District of Columbia sitting as a Criminal Court.

There was an indictment and conviction for a violation of the sixth section of the Act of Congress of August 2, 1886, entitled "An act defining butter, and also imposing a tax upon and regulating the manufacture, sale, importation, and exportation of oleomargarine," (24 Stat. 249), sometimes called for the sake of brevity the "Oleomargarine Act." The sixth section of this act, which is the section charged to have been violated, is as follows:

" Sec. 6. That all oleomargarine shall be packed by the manufacturer thereof in firkins, tubs or other wooden packages not before used for that purpose, each containing not less than ten pounds, and marked, stamped, and branded as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe; and all sales made by manufacturers of oleomargarine, and wholesale dealers in oleomargarine, shall be in original stamped packages. Retail dealers in oleomargarine must sell only from

original stamped packages, in quantities not exceeding ten pounds, and shall pack the oleomargarine sold by them in suitable wooden or paper packages, which shall be marked or branded as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe. Every person who knowingly sells, or offers for sale, or delivers or offers to deliver, any oleomargarine in any other form than in new wooden or paper packages, as above described, or who packs in any package any oleomargarine in any manner contrary to law, or who falsely brands any package or affixes a stamp on any package denoting a less amount of tax than that required by law, shall be fined for each offense not more than one thousand dollars and be imprisoned not less than two years."

By the bill of exceptions taken in the case, which is a model of its kind and worthy of imitation for its succinctness, and by the assignments of error based thereon, three questions are raised : 1st. Whether the section in question is a constitutional and valid exercise of legislative power; 2d. Whether the regulations made by the Commissioner of Internal Revenue in pursuance of the act and which were alleged in the indictment, should not have been proved at the trial, at which, it seems, judicial notice was taken of them, instead of their being proved; and, 3d. Whether a sale by an employee of the appellant at the appellant's place of business, and in the due course of that business, is sufficient to charge the appellant with knowledge of the sale, so as to make him criminally liable under the act.

1. The act of Congress in question, it will be noticed, is distinctly a revenue act, and so purports to be in express terms.    In this it differs from a previous statute of January 25, 1879, enacted only for the District of Columbia, and entitled "An act for the protection of dairymen, and to prevent deception in sales of butter and cheese in the District of Columbia " (20 Stat. 264), which was purely an exercise of the police power of Congress.    As a measure for the levy

of taxes in aid of the revenue of the United States, the special execution of the act of August 2, 1886, like the previous internal revenue laws, to which it was a supplement, was naturally committed to the Secretary of the Treasury and the Commissioner of Internal Revenue; and those officers, in Section 20 of the act, were charged with the making of all needful regulations for carrying the act into effect. It may be suspected from the history of the time that the guise of taxation was only a covert effort to suppress or restrict a fraudulent traffic which had become exceedingly common, that of passing off oleomargarine upon the public as butter. But we are not at liberty to go beyond the plain and express terms of the act, which purported to be merely an act for levying taxes, and which as such it was plainly within the power of Congress to enact for the whole Union, and not alone for the District of Columbia. And construed as a revenue act, it is subject to rules of interpretation and construction somewhat different from those which obtain with regard to statutes enacted in pursuance of the police power. As a revenue act, it is almost of necessity inoperative until it is put into effect by the regulations of the Treasury Department and of the officers therein charged with the collection of the revenue; and as such an act it is to be construed liberally to carry out the purpose of its enactment, and its penal provisions are not to be rigidly construed. *Smythe* v. *Fiske*, 23 Wall. 374; *United States* v. *Hodson*, 10 Wall. 395.

The constitutionality of Section 6 of the statute is called in question, on the ground that it does not itself completely define and declare any offence against the United States; that it leaves it to the Commissioner of Internal Revenue and the Secretary of the Treasury to determine by their regulation what shall constitute a criminal offence against the United States, inasmuch as they are to determine the stamp or marking, the omission or falsification of which constitutes the offence, as it is claimed; and that this is a

delegation of legislative power which it is incompetent for Congress under the Constitution to attempt.

Subject to the limited power of legislation which by immemorial usage may be delegated to the municipal bodies within its control, and subject likewise to the peculiar and exceptional delegation of legislative authority which Congress may make to the Territorial legislatures of the Territories of the United States, it is a fundamental principle of our jurisprudence that legislative power may not be delegated. And it is equally a fundamental dogma of our law that no more in the domain of the criminal or penal branch of jurisprudence than in any other branch of it can there be a valid delegation of legislative authority. Indeed, the requirement is probably more rigid in criminal than in civil matters that legislation of the character of penal enactment should emanate directly from the ordinary organ of supreme legislative power in the State. *Stoutenburgh* v. *Hennick*, 126 U. S. 141. And in accordance with this principle, it was held by the Supreme Court of the United States in the case of the *United States* v. *Eaton*, 144 U. S. 677, that a regulation prescribed by the Treasury Department, apparently to carry into effect an act of Congress, could not create a criminal offence against the United States, when no such offence had been created by the act itself. See also the cases of *Morrill* v. *Jones*, 106 U. S. 466, and *Caha* v. *United States*, 152 U. S. 211.

But we do not think that the criminal liability in the present instance is the creation or the result of departmental or official regulation. It seems rather to fall into the category of offences indicated in the case of *Caha* v. *United States, supra*, in which Congress has fully declared the offence, and departmental regulation has merely afforded the opportunity for its commission.

The statute, as we have stated, is a revenue act. It requires departmental action to set it in operation. It imposes a tax upon oleomargarine, precisely as other statutes have

imposed similar taxes upon tobacco and intoxicating liquors; and similarly also to those statutes, it imposes restrictions and provides for stringent regulations of the manufacture and sale of the article from which it is sought to raise the tax. It cannot be said that the regulations herein provided to be observed with regard to the manufacture and sale of oleomargarine are any more severe or more restrictive of private right than are those provided with regard to the manufacture and sale of tobacco and intoxicating liquors. And yet we do not understand that the propriety of these latter has ever been seriously or successfully questioned. Nor do we understand that the authority of Congress is questioned to make similar regulations for the more efficient enforcement of the tax which it has thought proper to impose upon the article known as oleomargarine. The argument is, that Congress has delegated its power of regulation to the Commissioner of Internal Revenue, and has made into a penal offence the violation of such regulation as that officer should make. The argument does not seem to us to be sound.

The statute prescribes that oleomargarine shall not be sold except in packages of wood or paper, duly stamped, marked, or branded; and it provides that sale thereof without such stamp, mark, or brand, shall be a penal offence. The special form or designation of stamp, mark, or brand, it does not prescribe; this is what it commits to the Commissioner of Internal Revenue and the Secretary of the Treasury. The Commissioner, with the approval of the Secretary, is to furnish the stamp, mark, or brand, without which the sale of the article is not to be made. We fail to see how this provision differs in principle from the provisions of the Internal Revenue Act (Revised Statutes, Secs. 3395, 3312, 3445, 3446, 3341, 3369, &c.), which direct the Commissioner of Internal Revenue to prepare suitable stamps to be used on packages of cigars, tobacco, and spirits, to change such stamps when deemed expedient, and

to devise and regulate the means for affixing them; or from the provisions of law regarding the postoffice (Sec. 3914 of Revised Statutes), which prescribe that "the Postmaster General shall prepare postage stamps of suitable denominations,"—all of which make it a penal offence to counterfeit, steal, or fraudulently affix, or fraudulently remove such stamps. The matter of the designing and preparation of these stamps is an executive duty that is properly remitted by the legislative authority to the proper executive officers of government; and yet there can be no offence in the premises until the executive officers have acted. Now, it cannot reasonably be said that the legislative enactment is incomplete and insufficient when it denounces penalties upon the misuse of stamps thereafter to be provided by the executive officers, or that it is a delegation of legislative authority to executive officers when penalties are provided for the misuse of devices thereafter to be provided by them. To hold otherwise would be to overthrow the whole internal revenue system, as well as the whole postal system, of the United States.

The provision of the statute now before us for consideration is that the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall provide and furnish to the dealers a mark or brand, which does not differ in principle from a stamp, without which oleomargarine is not to be sold and which will be evidence that the tax upon it has been paid; and that any person who knowingly offers for sale any oleomargarine in any other form than in new wooden or paper packages, with the mark or brand so to be furnished by the Commissioner, shall be liable to a prescribed penalty. This is no more than providing that no oleomargarine shall be sold except in packages duly branded so as to show that the tax upon it has been paid. The brand is no more than a receipt furnished by the Commissioner, or an evidence of payment given by him to the dealer. We fail to see, therefore, how the requirement of a mark or

brand by the Commissioner is a delegation of legislative power to that officer, any more than would be a requirement that he should give a receipt in writing that the tax had been paid.

The case of *O'Neill* v. *Insurance Co.*, 166 Pa. St. 72, cited to the contrary, is not adverse to this position, or applicable at all in this connection. In that case, it appeared that the legislature of Pennsylvania, for the purpose of checking some of the evils that had resulted from certain practices of foreign insurance companies doing business in that State, had authorized the insurance commissioner of the State to prepare and file in his office a form of standard policy of insurance to be executed by all these companies. There was no provision for the submission of this "standard policy" to the legislature; and there was no possibility even that anyone should know its contents until it was prepared by the Commissioner. And yet the statute proceeded to enact that this "standard policy," so to be prepared, and which would of necessity embody most important contracts between those who should become parties to it, should, after it was filed by the Commissioner, become the sole and exclusive form of contract for use thereafter in the State. The Supreme Court of Pennsylvania very properly held the statute null and void as having devolved upon the insurance commissioner a most extraordinary delegation of legislative authority, inasmuch as it gave that officer a power, which the legislature itself should only exercise with the greatest circumspection, that of determining what contracts might thereafter be validly made by and with insurance companies, which became bound by severe penalties to conform to the requirements of the Commissioner. This was no mere ministerial or executive duty ; but the highest exercise of legislative power. The remodeling of the whole law of contracts in regard to insurance companies could not well be confided by the legislature to an officer. This case is an excellent illustration of the fundamental principle already stated,

that legislative power cannot be delegated; but it is not authority to show that an executive officer should not furnish a stamp, or a mark, or a brand, to show that a tax had been paid, or that the legislative authority might not provide a penalty for the failure to procure such a stamp, mark, or brand.

We understand that the precise question now before us was raised in the Eighth Judicial Circuit of the United States, in the case of *United States* v. *Ford*, 50 Fed. Rep. 467, and decided upon demurrer by Mr. Justice Thayer adversely to the contention of the defendant, which was the same as the contention of the appellant in the case before us. That decision seems to us to be correct in principle; and the case seems to be clearly distinguishable from that of the *United States* v. *Eaton, supra.*

2. By his second assignment of error, the appellant raises the question, whether the regulations made by the Commissioner of Internal Revenue in pursuance of the statute, and stated or alleged in the indictment, should not have been proved at the trial by the prosecution. It seems that no proof was offered to be made of them.

It may be doubted whether this question was raised in the court below with sufficient distinctness to authorize us to pass upon it. If raised at all, it must have been by the general instruction requested by the defence that the court should direct a verdict of acquittal. But whether it was sufficiently raised or not, we think that the question was decided by the Supreme Court of the United States, in the case already cited of *Caha* v. *United States*, 152 U. S. 211. There the court said:

"The rules and regulations prescribed by the Interior Department in respect to contests before the Land Office were not formally offered in evidence, and it is claimed that this omission is fatal, and that a verdict should have been instructed for the defendant. But we are of opinion that there was no necessity for a formal introduction in evidence

of such rules and regulations. They are matters of which
the courts of the United States take judicial notice. Ques-
tions of a kindred nature have been frequently presented,
and it may be laid down as a general rule, deducible from
the cases, that whenever, by the express language of any
act of Congress, power is entrusted to either of the princi-
pal departments of government to prescribe rules and regu-
lations for the transaction of business in which the public is
interested, and in respect to which they have a right to
participate, and by which they are to be controlled, the
rules and regulations prescribed in pursuance of such au-
thority become a mass of that body of public records of
which courts take judicial notice. Without attempting to
notice all the cases bearing upon the general question of
judicial notice, we may refer to the following : *United States*
v. *Teschmaker,* 22 How. 392, 405 ; *Romero* v. *United States,* 1
Wall. 721 ; *Armstrong* v. *United States,* 13 Wall. 154 ; *Jones*
v. *United States,* 137 U. S. 202 ; *Knight* v. *United States Land
Association,* 142 U. S. 161, 169 ; *Jenkins* v. *Collard,* 145 · U.
S. 546."

The distinctions sought to be drawn by the appellant that
the regulations in the Caha case were in execution of a plain
law, while here they are, as alleged, the law itself, is wholly
untenable, and unjustified by any authority. We have held
already that the regulations in the present case are not the
law, but in aid of the law. But if the contrary were the
case, and the regulations were the law for the violation of
which the appellant is held, the position is again untenable,
for the simple reason that it is never necessary to offer the
law in evidence.

3. The third assignment of error assumes to hold that the
jury should have been instructed to acquit the defendant,
on the ground that no sale by himself had been proved, or
offered to be proved.

The proof, as stated in the bill of exceptions, was on the
part of the prosecution that " the defendant or some one by

him there employed," sold the article specified in the indict-
ment.    This was controverted by the testimony for the de-
fendant.    The court, as requested by the defendant, in-
structed the jury, that, in order to convict the defendant,
they must find that he sold the thing offered in evidence as
butter ; that he sold it as butter knowing it to be oleomar-
garine ; and that he sold it without its being in a stamped
or wrapped package, as required by law ; and that he did
this, not through ignorance, accidentally, or by inadvertence,
but knowingly.    And the court further instructed the jury
of its own motion that it was sufficient if the article was
sold in the defendant's place of business in the usual and
ordinary course of business, whether it was sold by himself
personally or by a clerk or employee.    This stated the law
as favorably to the appellant as he was entitled to have it.
To hold that the act of the clerk or employee in such cases
is not the act of the employer, would be to nullify the law
and would be contrary to all principle.    It is true that it is
not the sale of oleomargarine for butter, however dishonest
such transaction may be, that is here prohibited ; but only
the sale of oleomargarine, without its being packed in
stamped or branded packages, in violation of the internal
revenue law imposing a tax upon it.    As claimed on behalf
of the appellant, it was proper for Congress to charge the
act with a penalty only in the event of its being done know-
ingly and intentionally.    But knowledge and intention to
violate the revenue laws might equally well be charged,
whether the act done was the immediate act of the person
charged, or his authorized act through an employee.

We find no error in the record ; and the judgment must
be *affirmed.    And it is so ordered.*

Mr. Justice SHEPARD dissents from the first proposition
stated in the opinion.

A motion for a rehearing was overruled, Mr. Justice SHEP-
ARD dissenting.